

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 25, 2022

**BY EMAIL & ECF**
The Honorable Andrew L. Carter Jr.
United States District Court Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    **Re:**    *United States* v. *Richard Hall,* **21 Cr. 643 (ALC)**

Dear Judge Carter:

      Defendant Richard Hall (the "Defendant") is scheduled to be sentenced on December 1, 2022, having pled guilty to firearms trafficking in violation of Title 18, United States Code, Sections 922(a)(1)(A), 924(a)(1)(D) and 2. The Government submits this letter in advance of sentencing. For the reasons explained below, the Government submits that a sentence within the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 24 to 30 months' imprisonment is warranted in this case.

## I.      Factual Background

      In January 2020, the Bureau of Alcohol Tobacco, Firearms and Explosives began investigating firearms trafficking involving the Defendant, including through two controlled purchases of firearms involving another individual (Individual-1). Pre-Sentence Investigation Report dated July 18, 2022 ("PSR") ¶ 9. From January 3 through 8, 2020, the Defendant and Individual-1 discussed, by Facebook and phone, a potential firearms and ammunition deal, wherein the Defendant would travel to New York with the items. *Id.* ¶¶ 10-13. The Defendant agreed to take a bus from out of state, and on January 8, 2020, he sold Individual-1 a .380 caliber pistol and hollow-tip bullets for $700 in the Bronx, New York. *Id.* ¶¶ 11, 19.

      On January 9, 2020, the Defendant sent Individual-1 a Facebook message offering to sell Individual-1 another firearm for $800. That same day, the Defendant sent another individual ("Individual-2") a Facebook message discussing the sale of two firearms and telling Individual-2 that "if you know anybody send [th]em my way." *Id.* ¶ 21. From January 28, 2020 through February 4, 2020, the Defendant and Individual-1 discussed the sale of four additional firearms that Defendant intended to bring into New York, which he then sold to Individual-1 on February 4, 2020, for $3,100, in the Bronx, New York. *Id.* ¶¶ 23 – 31. One of these firearms (a Sig Sauer .40 caliber pistol with serial number 47A037926) was stolen. *Id.* ¶ 33. As part of that transaction, Defendant also sold Individual-1 ammunition and magazines, including extended magazines. *Id.* ¶ 31.

In addition to the conduct described in the Complaint, the Defendant's Facebook account indicates further involvement in firearms trafficking. A selection of these chats are described below, in substance and in part:

- On or about February 18, 2020, the Defendant told another individual ("Individual-2"), "Nigga got two straps rn," "A glock and a mp5" (*i.e.*, the Defendant had two guns right now, a glock and a submachine gun"); the next day, the Defendant told Individual-2, "I found another strap" "cheap," (*i.e.*, I found another gun for cheap), to which Individual-2 responded, "Text my phone when talking bout that."
- On or about September 3, 2020, after another individual ("Individual-3") asked "What you got for me gang," the Defendant responded "380" "11" (*i.e.*, a .380 caliber pistol for $1,100"). Later, Individual-3 stated, "I'm waiting for the picture my mans wanna see a video he saying that a lil to pricey for a 380" (*i.e.,* the potential buyer wants to see a video of the firearm because the price the Defendant quoted is expensive).
- On or about September 26, 2020, the Defendant asked another individual ("Individual-4"), "You got a strap for sale" (*i.e.*, do you have a gun for sale?), and "I got 350 rn for one bro" (*i.e.*, I'll pay $350 for a gun), to which Individual-4 responded, "Not right now."

## II.    Procedural History

On September 22, 2021, the Defendant was taken into federal custody in North Carolina and charged by Complaint with violating Title 18, United States Code, Sections 922(a)(1)(D), 924(a)(1)(D), and 2. *Id.* ¶ 6.

On October 22, 2021, the Defendant was released from federal custody, subject to certain bail conditions. *Id.*

On April 26, 2022, the Defendant pled guilty to the Indictment pursuant to a plea agreement. *Id.* ¶ 4. The Probation Office has calculated the same Guidelines range as the Government, *Id.* ¶¶ 40-55, 97, as has the Defendant.

Besides the instant case, ███████████████████, on March 12, 2021 the Defendant was arrested for assaulting a victim in Myrtle Beach, South Carolina. *Id.* ¶ 63. Video surveillance footage depicted the Defendant kicking and punching the victim in the body and head area; the victim suffered great bodily injury during the incident and had to receive treatment at a medical facility. *Id.*

## III.    The Plea, Guidelines Calculation, and PSR.

In the plea agreement, the parties stipulated that the Defendant's base offense level is 12, pursuant to United States Sentencing Guidelines ("U.S.S.G") § 2K2.1(a)(7); under U.S.S.G. § 2K2.1(b)(1)(A), two levels are added because the offense involved between three and seven firearms; an additional two points are added pursuant to U.S.S.G § 2K2(b)(4)(A) because one of the firearms involved in the offense was stolen, and four points were added pursuant to U.S.S.G. § 2K2.1(b)(5)

because the Defendant trafficked in firearms. *Id.* ¶ 5. After a three-level reduction for acceptance of responsibility, the Defendant's total offense level is 17. *Id.* The parties further stipulated that the Defendant has zero criminal history points and therefore is in Criminal History Category I, resulting in a Guidelines range of 24 to 30 months' imprisonment (the "Stipulated Guidelines Range").

## IV.    Discussion

A sentence within the applicable Stipulated Guidelines Range of 24 to 30 months' imprisonment is sufficient and not greater than necessary, particularly to reflect the seriousness of the instant offense, to protect the public and to deter future criminal conduct by this defendant and others, and to reflect the history and characteristics of the Defendant. *See* 18 U.S.C. § 3553(a)(1)-(2)(A)-(C).

*First*, a sentence within the Guidelines range is necessary to reflect the seriousness of the offense, protect the community from harm, and provide general deterrence. *See* 18 U.S.C. § 3553(a)(2)(A), (B), and (C). The Defendant deliberately and illegally trafficked firearms across state lines, thereby placing the New York City community in peril in a very real and serious way. Individuals like the Defendant who illegally traffic in firearms are the driving force behind an epidemic of gun violence in New York City. As Judge Gardephe noted in *United States v. Michael Morgan*, 21 Cr. 556 (S.D.N.Y. 2022) (June 2, 2022 Sentencing Hr., Tr. 14:15-20), "someone who sells semiautomatic handguns in our community, thereby indicates that he has no concern for the community. These guns cause enormous damage in our community every day. We read every day about some innocent bystander, often children. . . who are the unintended victims of gun violence caught in the middle." Firearms traffickers act with disregard for the danger they create and the lives they put at risk.

There are no gun manufacturers in New York City. Rather, guns flow into the city via traffickers, traveling by car, train, plane, and bus from outside the state, often through the "Iron Pipeline" or the "New York Pipeline."[1] The New York Attorney General estimates that 76% of trafficked guns come into New York from seven states, including – as in the case of the Defendant – North Carolina.[2] Even though, in this case, the Defendant is not charged with pulling the trigger of a firearm, he has demonstrated that he is ready, willing, and able to put illegal firearms in the hands of those who could – and to grow his share of the black market at the expense of victims in New York. A sentence of less than 24 months' incarceration would understate the seriousness and dangerousness of the Defendant's crime.

It is critically important that the Court make clear that this type of conduct cannot and will not be taken lightly. At a time when gun violence is so prevalent, the need for general deterrence is particularly striking. *See United States v. Cavera*, 550 F.3d 180 (2d. Cir. 2008) (considering the

---

[1] www.documentcloud.org/documents/21185516-nyc-mayors-blueprint-to-end-gun-violence.

[2] https://targettrafficking.ag.ny.gov/. *See also* Most Guns Used to Commit Crimes in New York Were Bought in Other States, Report Finds – NBC New York, available at: https://www.nbcnewyork.com/news/local/gun-trafficking-new-york-laws-violence-eric-schneiderman-illegal-weapon/2040315/.

district court's decision to consider New York market conditions in order to accomplish the goal of general deterrence in a gun trafficking case and holding no abuse of discretion). A sentence within the Stipulated Guidelines Range would send a message to the Defendant and others like him, that his continued criminal behavior will not be tolerated.

*Second*, a Guidelines sentence is needed for specific deterrence and in light of the Defendant's history and characteristics. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(B). The Defendant's offense conduct, as well as his communications regarding additional involvement in firearms trafficking in the months after the conduct described in the Complaint, indicate that this crime was far from a one-off mistake of youth. Moreover, as described above, ██████████████████ ██████████ t. Thus, the Defendant's prior criminal conduct and the need for specific deterrence warrant a sentence within the Guidelines range.

V.      **Conclusion**

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Stipulated Guidelines Range of 24 to 30 months' imprisonment.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

by: _Kaylan E. Lasky_
Kaylan E. Lasky
Assistant United States Attorney
(212) 637-2315